**Kenneth Lee SADLER and Violet Sadler, Plaintiffs,**

**v.**

**NEW CASTLE COUNTY, James D. McCarnan, Harry Connor, Eric Cannon, Richard Hegelund, Professional Ambulance Service, Inc., a Delaware corporation, Talleyville Fire Company, a Delaware corporation, the Mayor and Council of Wilmington, Carmen Maiorano, Edward Hojnicki and Ronald Anderson, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: Sept. 23, 1986.
Decided: Feb. 3, 1987.

Morton R. Kimmel, and Paul H. Spiller, of Kimmel, Spiller & Weiss, Wilmington, for plaintiffs.

John G. Mulford, of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, for defendants New Castle County, et al. and Professional Ambulance Service, Inc.

Wayne N. Elliott, and Michael P. Kelly, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendant Talleyville Fire Co.

Jeffrey S. Goddess, of Saul, Ewing, Remick & Saul, Wilmington, for defendants City of Wilmington, et al.

O'HARA, Judge.

Presently before the Court are motions for summary judgment by New Castle County and the named county paramedics ("County"); the Professional Ambulance Service, Inc. ("Professional"); Talleyville Fire Company ("Talleyville"); and the Mayor and Council of Wilmington together with named city fire department officials ("City"). For the reasons set forth herein, summary judgment is granted as to New Castle County, Talleyville Fire Company, the Mayor and Council of Wilmington, and the named city fire department officials.

Summary judgment is denied with respect to the named county paramedics.

On July 31, 1983, plaintiff Kenneth Sadler and three friends were floating down the Brandywine River on logs. As they approached the Brandywine falls, they got off the logs in order to wade toward the river bank. Plaintiff, standing near the lip of the falls, slipped and fell headfirst over the falls and struck his head on the rocks six to eight feet below. One of plaintiff's companions jumped over the falls and dragged plaintiff to the shore, where he began to administer CPR.

Defendants James D. McCarnan and Eric Cannon, two of the named county paramedics, arrived at the scene roughly ten minutes after they were notified. McCarnan parked his emergency vehicle on the edge of Alapocas Drive and proceeded to the river, which was approximately ¼ mile away down a rocky embankment. Cannon followed, carrying with him a cardiac box, a long backboard, a cervical collar, and an oxygen unit. He was followed by two or three Talleyville Fire Company personnel.

Upon their arrival, plaintiff was lying on his left side, was breathing on his own, and was demonstrating mild seizure activity. McCarnan and Cannon placed plaintiff in a cervical collar and took his vital signs. At this time the plaintiff was started on an I.V. injection of dextrose and given nasal oxygen.

Plaintiff was then placed on an orthopedic stretcher, which is designed to maintain complete or straight alignment of the body. Plaintiff's head was taped to the stretcher to keep it immobilized. The stretcher was placed in a Stokes basket and secured to the basket with straps. McCarnan radioed Dr. Jay Feldstein, the doctor on call at the emergency room of the Wilmington Medical Center. McCarnan advised Dr. Feldstein that plaintiff was unconscious, that he had dove or fallen into the river, that he had a laceration on his head, that he was unresponsive and demonstrating some movement and seizure-like activity, and that they had applied a cervical collar and performed basic spinal immobilization.

The paramedics and fire company personnel considered several alternatives for removing plaintiff from the scene. Overhanging trees and an inadequate landing area precluded the use of a helicopter. A rubber boat was requested but was unavailable. Finally, they concluded that it would be too dangerous to both the plaintiff and rescue personnel to attempt to haul the plaintiff over the rocky terrain back up to the Alapocas Drive parking area. Consequently the rescuers decided to transport plaintiff across the river below the falls in the Stokes basket. Dr. Feldstein agreed with the decision.

Cannon swam to the far bank to assist the rescue personnel in bringing a 250 foot hemp line across the river. The line was secured by Talleyville on the Alapocas side and by the Wilmington Fire Department on the city side. The Stokes basket was secured to the line with leather belts. Paramedics Cannon and Hegelund, three members of Talleyville, and Hojnicki and Maiorano of the Wilmington Fire Department then proceeded to move plaintiff across the river.

The parties' versions of the trip across the river are in conflict. Plaintiff contends that the rescue party had difficulty maintaining footing on the river bottom and that plaintiff's head and body was submerged several times. Defendants assert that while plaintiff's back and lower body may have become wet, his upper body and head never submerged. All parties agree, however, that upon reaching the city side of the river, the paramedics ascertained that plaintiff had a loss of sensation from the nipple down. Cannon informed the emergency room of the loss of sensation and advised the ambulance driver to drive slowly to the hospital.

Plaintiff, a quadriplegic as a result of the incident, has alleged that the defendants engaged in wanton misconduct in extricating him from the accident scene and that such conduct caused his quadriplegia.

## I. COUNTY AND TALLEYVILLE'S MOTIONS FOR SUMMARY JUDGMENT

In support of their motions for summary judgment, New Castle County, the named

county paramedics, and the Talleyville Fire Company rely on immunity protections provided under several statutes.

First, the defendants assert the immunity provided by the County and Municipal Tort Claims Act ["Act"], 10 *Del.C.* §§ 4010–4013.[1] The Act protects all governmental entities and their employees from suit on any and all tort claims in which recovery of damages is sought. *See* § 4011(a). Employees, but not the governmental entity itself, may be held personally liable for acts or omissions causing property damage, bodily injury, or death where their acts were performed with wanton negligence. *See* § 4011(c). Governmental entities, but not their employees, may be held liable for negligent acts causing property damage, bodily injury, or death under the circumstances set forth in § 4012.

County and Talleyville also rely on the immunity provided by the emergency care statute found at 16 *Del.C.* § 6801.[2] This statute protects, among others, certified emergency medical care attendants and technicians rendering emergency medical treatment, unless their acts or omissions amount to gross negligence or wilful or wanton misconduct.

Plaintiff argues in response that the defendants demonstrated wanton misconduct in their attempts to extricate him from the accident scene and that they are therefore not protected by the statutory immunities. Plaintiff offers the affidavit of John E. Hocutt, M.D., who avers that within reasonable medical probability the conduct of the defendants was reckless in choosing to risk further injury to the plaintiff by tak-

1. The relevant provisions read as follows:
§ 4010. *Definitions.*
As used in this subchapter, unless the context otherwise indicates, the following words shall have the following meanings:
(1) "Employee" means a person acting on behalf of a governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state or federal funds, including elected or appointed officials, volunteer firefighters and rescue squad members where the rescue squad receives full or partial financial support from political subdivisions or from the State, but the term "employee" shall not mean a person or other legal entity acting in the capacity of an independent contractor under contract to the governmental entity.
(2) "Governmental entity" means any municipality, town, county, administrative entity or instrumentality created pursuant to Chapter 8 of Title 22 or Title 9, any municipality created by a special act of the General Assembly, any housing authority created pursuant to Chapter 43 of Title 31, any parking authority created pursuant to Chapter 5 of Title 22 and all registered volunteer fire companies and volunteer rescue squads.
§ 4011. *Immunity from suit.*
(a) Except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages. That a governmental entity has the power to sue or be sued, whether appearing in its charter or statutory enablement, shall not create or be interpreted as a waiver of the immunity granted in this subchapter.
\* \* \* \* \* \*
(c) An employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in

which his or her governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or wilful and malicious intent.
§ 4012. *Exceptions to immunity.*
A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:
(1) In its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary.
\* \* \* \* \* \*

2. The statute reads in pertinent part as follows:
§ 6801. *Persons rendering emergency care exempt from liability; Advanced Life Support Standards Committee.*
\* \* \* \* \* \*
(b) Any emergency medical care attendant or technician possessing a valid certificate issued by authority of the State Fire Prevention Commission, or a duly authorized representative thereof, who in good faith and without remuneration from any injured or ill person, renders emergency care or assistance to any injured or ill person, whether at the scene of an accident, fire or any other place, or while transporting such injured or ill person to, from or between any hospital, medical facility, medical clinic, doctors's office or other similar or related medical facility, shall not be liable for any civil damages for acts or omissions resulting from the rendering of such emergency care, treatment or assistance, except acts or omissions amounting to gross negligence or wilful or wanton misconduct.

ing him across the river rather than up the ground path. Dr. Hocutt indicates that a quick examination of the river conditions should have revealed to the rescuers that the Stokes basket containing plaintiff could not have received any significant support from the rescuers or the hemp line. Knowing full well that stability of the head and neck in such cases is of crucial importance, the affiant suggests, the rescuers nonetheless proceeded to transport a patient suffering from a spinal cord injury in a motion-packed, unstable method.

Defendants rely on the affidavit of William Kraut, M.D., who avers that the rescue personnel exercised the appropriate standard of care in the manner and method of immobilizing plaintiff in preparation for transport, in rendering medical treatment at the scene, and in transporting plaintiff from the scene to the emergency room at the Wilmington Medical Center. Dr. Kraut posits that plaintiff's quadriplegia resulted from the dive or fall over the Brandywine falls and not from any action taken by the rescuers.

■ Wanton conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that he either knows or should know that there is an imminent likelihood of harm which can result. *Yankanwich v. Wharton*, Del.Supr., 460 A.2d 1326, 1331 (1983). It is manifest in an "I don't care" attitude that demonstrates a conscious indifference to the consequence of one's actions. *McHugh v. Brown*, Del.Supr., 125 A.2d 583, 586 (1956).

■ The existence of negligence in any degree is normally a question for the finder of fact. Whether the plaintiff has presented evidence that is legally sufficient to take the issue to the jury, however, is a matter for the Court to decide. Submission is required if there is any evidence, however slight, tending to prove that the defendants acted with the degree of negligence pleaded by the plaintiff. Only when one conclusion can be drawn from undisputed material facts may such questions be determined as a matter of law. *Caine v. New Castle County*, Del.Supr., 379 A.2d 1112, 1116 (1977).

As is required in summary judgment cases, the Court has examined the facts in a light most favorable to the non-moving party. *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver Incorporated*, Del.Super., 312 A.2d 322, 325 (1973). Upon reflection, the Court is not convinced that reasonable minds could not differ with respect to the quality of the defendant's conduct. The Court is particularly impressed in this regard with the affidavit of Dr. Hocutt. The doctor explained that in cases involving spinal cord injury where a patient has been stabilized, it is far more important to ensure complete spinal immobilization than to risk motion in order to save time. Dr. Hocutt indicated that the method of extrication chosen by the rescuers—employing a line suspension transport technique over a great distance above a river at a point of significant depth and current—presented an obviously greater chance for motion-related injuries to the spinal cord than the trip up the ground path. The doctor additionally noted that the paramedics would have been powerless to render medical assistance in the event the patient's condition worsened during the trip.

■ In light of Dr. Hocutt's representations, considered together with the defendants' specialized knowledge and training, the Court is satisfied that there is evidence sufficient to take the issue of wanton misconduct to the jury. This holding applies to the named county paramedic defendants only. Under the County and Municipal Tort Claims Act, governmental entities themselves are immune but for the circumstances set forth in 10 *Del.C.* § 4012. In order to survive a motion for summary judgment as to New Castle County and the Talleyville Fire Company, therefore, plaintiff must show that this case comes within one of the enumerated circumstances.

Plaintiff has in fact so argued. Plaintiff contends that the facts bring this case

within the so-called "equipment" exception found at 10 *Del.C.* § 4012(1).[3]

Plaintiff suggests that the rescue equipment used, namely an orthopedic back board, stretcher, Stokes basket, life line, and other such devices, constitutes special mobile equipment within the meaning of the exception. The defendants insist that the General Assembly did not intend for such items to be included within the definition of equipment.

The question of what constitutes "equipment" under the exception was recently discussed in *White v. Crowley*, No. 84C–AP–87, Balick, J. (May 8, 1986) [Available on WESTLAW, DE–CS database]. There Judge Balick concluded that in interpreting the provision the Court would more likely carry out the General Assembly's intent by employing the doctrine of *ejusdem generis* than by relying on the dictionary definition of "equipment." *Id.*, at 8. Accordingly, the Court approached a definition by considering the specific examples listed in the statute. Noting that the terms "motor vehicle", "special mobile equipment", and "trailer" are set forth and defined in the Delaware Code title dealing with motor vehicles, Judge Balick observed:

> They all refer to vehicles which may be used to transport people or property on land, including vehicles that are not self-propelled and vehicles whose use in conveying people or things is incidental to the primary use in agriculture. The one exception, aircraft, differs only in that it is used to transport people or property in air instead of on land.

*Id.*, at 6.

■ While it is true, as plaintiff suggests, that the backboard, stretcher, and Stokes basket were all used to transport the plaintiff, the Court is satisfied that these medical devices were not what the legislature had in mind when it formulated the exception. Motor vehicles, special mobile equipment as defined in Title 21, trailers, and aircraft are instruments which are commonly at the center of tort suits and which, by virtue of their potential to inflict damage and injury when negligently maintained or used, are subject to regulation

under our laws. The same cannot be said for the devices here claimed to fall within the exception. Consequently the Court holds that the equipment exception is not applicable on the present facts and will therefore not operate to penetrate the immunity extended to the County and the Talleyville Fire Company.

Plaintiff alternatively argues that Talleyville has waived its immunity under the County and Municipal Tort Claims Act because Talleyville previously purchased liability insurance. This argument conflicts with the expressed statutory language which states that governmental entities shall be immune from suit "[e]xcept as otherwise expressly provided by statute." *See* 10 *Del.C.* § 4011(a). That legislative action is necessary in order to waive the protection of the statute was made clear in *Fiat Motors of North American, Inc. v. Mayor and City Council of Wilmington*, Del.Supr., 498 A.2d 1062 (1985). There the Delaware Supreme Court held that municipalities are without power to waive the immunity and that the purchase of liability insurance therefore did not result in such a waiver. *Id.*, at 1067–68. Plaintiff asks this Court to limit the *Fiat Motors* holding to instances in which *municipalities* purchase liability insurance. The Court can find no basis for so holding.

■ The County and Municipal Tort Claims Act is an extension of the doctrine of sovereign immunity. Sovereign immunity may be waived only by an act of the General Assembly. *See Shellhorn & Hill, Inc. v. State*, Del.Supr., 187 A.2d 71, 74 (1962). Volunteer fire companies, as well as municipalities, are considered to be government entities under the statute, and, as such, are powerless to effect a waiver on their own. Consequently the existence of liability insurance cannot be construed as a waiver of Talleyville's statutory protections under the Act.

Plaintiff finally seeks to have the Act declared unconstitutional on the ground that it violates the equal protection clause

---

**3.** See note 1.

of the federal constitution and Article I, § 9 of the Delaware Constitution.

Plaintiff's equal protection argument is essentially that the Act creates two classes of plaintiffs—those suing private tortfeasors and those suing tortfeasors protected by the statutory immunity—that receive distinctly different treatment in the courts. No rational basis exists, contends the plaintiff, to support the differing treatment.

■ The equal protection clause requires that, in the absence of a suspect classification or fundamental right, legislative classification bear a rational relationship to a legitimate state purpose. *Cheswold Volunteer Fire Company v. Lambertson Construction Company*, Del. Supr., 489 A.2d 413, 415 (1984). A fundamental right has been defined as a right that is guaranteed either explicitly or implicitly by the constitution. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1296–1297, 36 L.Ed.2d 16 (1973). This Court is aware of no constitutional provision, state or federal, guaranteeing the individual's right to sue the State. Consequently the Court will sustain the statute so long as the classification scheme is rationally related to a legitimate legislative objective.

■ The legislative intent in enacting the County and Municipal Tort Claims Act may be gleaned from the preamble to the statute. There the General Assembly states that the provision of vital local services would be jeopardized were counties and municipalities subject to tort liability, and that the cost of liability insurance, when obtainable, "has reached proportions unanticipated by local governments as a result of the multiplicity of lawsuits filed against local governments in recent years." Act of July 5, 1979, ch. 124, 62 Del. Laws 286, 286 (preamble). The Court is satisfied that the continued provision of local servic-

es and the maintenance of fiscal stability are legitimate state interests that support the enactment of an immunizing statute. The Court is also satisfied that the widespread impact tort liability might have were governmental entities subject to suit justifies the legislative classification scheme created by the statute. Accordingly, the Court concludes that the County and Municipal Tort Claims Act does not violate the equal protection guarantee of the federal constitution.

■ Plaintiff also contends that the Act's immunity provisions deny him a remedy in derogation of Article I, § 9 of the Delaware Constitution.[4] That provision does not, however, absolutely guarantee a remedy for every wrong done an individual. Delaware courts have construed this provision to establish the doctrine of sovereign immunity under which the State is shielded from suit unless the General Assembly by legislative act waives the protection. *See Wilmington Housing Authority v. Williamson*, Del.Supr., 228 A.2d 782, 786 (1967); *Shellhorn & Hill, Inc. v. State*, Del.Supr., 187 A.2d 71, 73 (1962). The last phrase in the provision, which states that "[s]uits may be brought against the State, according to such regulations as shall be made by law", indicates that the framers intended to give to the General Assembly the ability to choose the instances in which the State may be held liable for its conduct and the manner in which such suits may be brought. The Act, as a manifestation of that choice, is not inconsistent with the framer's design or the constitutional language. Accordingly, the statute does not violate the provision.

For the foregoing reasons, summary judgment must be granted as to New Castle County and the Talleyville Fire Company, and denied as to the named county paramedics.

---

**4.** Article I, § 9 provides:

All courts shall be open; and every man for an injury done him in his reputation, person, moveable or immovable possessions, shall have remedy by the due course of law, and justice administered according to the very right of the cause and the law of the land, without sale, denial, or unreasonable delay or expense. Suits may be brought against the State, according to such regulations as shall be made by law.

## II. PROFESSIONAL'S MOTION FOR SUMMARY JUDGMENT

Defendant Professional Ambulance Service, Inc. seeks summary judgment on the ground that plaintiff has failed to set forth specific facts showing that there is a genuine issue for trial.

Under Superior Court Civil Rule 56(e), bare allegations contained in the pleadings that are unsupported by specific facts are insufficient to withstand a summary judgment motion. The rule provides in pertinent part:

When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Consistent with this rule, the Delaware Supreme Court has explained that when a motion for summary judgment is supported by a showing that there are no material issues of fact, the burden shifts to the non-moving party to demonstrate that there are material issues of fact. *Moore v. Sizemore*, Del.Supr., 405 A.2d 679, 681 (1979). Where the non-moving party fails to carry this burden, summary judgment is appropriate.

The record shows that once plaintiff was transported across the river by the paramedics and fire department personnel, he was placed in Professional's ambulance and taken to the hospital. Notwithstanding his complaint, in which it is alleged that the defendants were negligent and/or guilty of wanton conduct in their rescue efforts in the improper use of the ambulance, plaintiff has set forth no specific facts in support of his allegations against Professional. Plaintiff has therefore failed to carry his burden under Rule 56(e) and *Moore v. Sizemore*, supra. Accordingly, Professional is entitled to judgment as a matter of law.

## III. CITY'S MOTION FOR SUMMARY JUDGMENT

The City defendants assert that they are entitled to summary judgment on the ground that plaintiff failed to comply with the notice requirement set forth in 10 *Del.C.* § 8124. That statute provides:

No action, suit or proceeding shall be brought or maintained against the Mayor and Council of Wilmington for damages on account of physical injuries, death or injury to property by reason of the negligence of the Mayor and Council of Wilmington or any of its departments, officers, agents or employees thereof, unless the person by or on behalf of whom such claim or demand is asserted shall, within one year from the happening of such injury, notify the Mayor in writing of the time, place, cause and character of the injuries sustained.

Plaintiff concedes that he missed the one year notice deadline, but nevertheless maintains that the section is not applicable to claims based on wanton misconduct, that the statute does not bar plaintiff's suit because the City suffered no prejudice, and that the statute is unconstitutional.

This Court knows of no decision in this State which stands for the proposition that § 8124 is inapplicable where a plaintiff alleges gross negligence or willful or wanton misconduct on the part of city defendants. The intent ascribed to the legislature in enacting this statute belittles the argument. Designed to inform the City of Wilmington of the details of a claim within one year of the "happening" of an injury, *see City of Wilmington v. Spencer*, Del.Supr., 391 A.2d 199, 203 (1978), the statute has no purpose in distinguishing between degrees of negligence. Indeed the notice requirement could be easily circumvented by parties filing untimely claims were its applicability dependent upon the degree of negligence pleaded by the plaintiff. In light of its purpose, the Court holds that § 8124 applies regardless of the degree of negligence alleged.

Plaintiff's argument that § 8124 is inapplicable absent a showing of prejudice

by the City is equally without merit. Neither the statutory language nor its purpose warrant imposition of such a condition, and this Court has been directed to no Delaware decision calling for such an analysis in applying the provision.

Plaintiff next challenges the constitutionality of the notice requirement under the equal protection clause of the federal constitution. The theory behind his challenge is that the provision is essentially a "special" one year statute of limitations applicable only to victims of Wilmington tortfeasors. Section 8124, it is argued, treats victims of Wilmington tortfeasors differently from 10 *Del.C.* § 8119, which provides for a two year statute of limitations and is applicable to victims of all other tortfeasors. Plaintiff contends that there is no rational basis for this difference in treatment.

The Court has reviewed the appropriate authorities and holds that the minimum scrutiny standard applies to test the constitutionality of the notice provision here at issue. This conclusion has been reached by a majority of the courts considering the issue. *See generally* McQuillan, *Municipal Corporations* § 53.152, at 729–35 (3d ed. 1978); Note, *Notice of Claim Provisions: An Equal Protection Perspective,* 60 Cornell L.Rev. 417, 436–39 (1975). Accordingly the Court will sustain the provision so long as a rational relationship can be shown to exist between the classificatory scheme and the legislature's objectives in enacting the statute.

Plaintiff contends that no rational basis exists for the difference in treatment, and cites several decisions in which similar statutes have been struck down on equal protection grounds.[5] A majority of jurisdictions have reached a contrary conclusion, however, and have sustained the constitutionality of these laws on a variety of legislative purposes.[6] The Delaware Su-

---

5. *See Reich v. State Highway Dept.,* 386 Mich. 617, 194 N.W.2d 700, 702 (1972); *Turner v. Staggs,* 89 Nev. 230, 510 P.2d 879, 883, *cert. denied,* 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973); *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825, 834–35 (1980); *Hunter v. North Mason High School,* 85 Wash.2d 810, 539 P.2d 845, 850–51 (1975); *O'Neil v. City of Parkersburg,* 160 W.Va. 694, 237 S.E.2d 504, 508–09 (1977).

6. *See, e.g., Dias v. Eden Township Hosp. Dist.,* 57 Cal.2d 502, 20 Cal.Rptr. 630, 631, 370 P.2d 334, 335 (1962) (statute requiring notice prior to claim against hospital not arbitrary or unreasonable because public agencies generally are proper subject for legislative classification); *Fritz v. Regents of the Univ. of Colo.,* 196 Colo. 335, 586 P.2d 23, 25 (1978) (fostering prompt investigation, repair of dangerous conditions, quick settlement of claims, and preparation of fiscal planning are legitimate state interests); *Crumbly v. City of Jacksonville,* 102 Fla. 408, 138 So. 486, 489 (sufficient distinction between municipal corporations and private parties provides reasonable basis for legislative classification), *aff'g on rehearing,* 102 Fla. 4080, 135 So. 885 (1931); *Newlan v. State,* 96 Idaho 711, 535 P.2d 1348, 1351 (opportunity to negotiate amicable accord, timely investigation, and preparation for defense constitute legitimate reasons for notice statute), *appeal dismissed,* 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975); *King v. Johnson,* 47 Ill.2d 247, 265 N.E.2d 874, 876 (1970) (notice statute reasonably related to legislative purpose of imposing tort liability on all local governmental entities on fair and orderly basis); *Batchelder v. Haxby,* 167 Ind.App. 82,

337 N.E.2d 887, 889 (1975) (consideration of differences between governmental and nongovernmental tortfeasors, including the source of funds used to compensate injured parties, constitutes reasonable basis for classification); *Lunday v. Vogelmann,* Iowa Supr., 213 N.W.2d 904, 908 (1973) (provision of method of prompt communication of circumstances for investigation not patently arbitrary and bears rational relationship to classification); *Campbell v. City of Lincoln,* 195 Neb. 703, 240 N.W.2d 339, 343 (1976) (purpose of affording political subdivisions with prompt notice of accident and injury in order to facilitate prompt investigation and intelligent consideration of claim sufficient justification for classification); *Reirdon v. Wilburton Bd. of Educ.,* Okla.Supr., 611 P.2d 239, 240 (1980) (legitimate state interest rationally furthered by notice statute which fosters prompt investigation while evidence is still fresh, affords opportunity to repair dangerous conditions, encourages settlement, and allows for fiscal planning to meet possible liability); *Brown v. Portland School Dist. No. 1,* 48 Or.App. 571, 617 P.2d 665, 668 (1980) (prompt investigation of merits, obtaining liability insurance, and adjusting claims are reasonable to support statutory classification), *rev'd on other grounds,* 291 Or. 77, 628 P.2d 1183 (1981); *Budahl v. Gordon & David Assoc.,* S.D.Supr., 287 N.W.2d 489, 492 (1980) (opportunity to investigate while evidence is fresh, prepare defense, evaluate merits of claim, protect against nuisance claims, facilitate prompt repairs, allow for budgeting of claims, and ensure officials are aware of duty to act are all proper reasons for increased protec-

preme Court has indicated that the statute is designed to notify the City of Wilmington of the details of a claim within one year of an accident causing injury. *City of Wilmington v. Spencer,* supra, at 203. The Court is satisfied that the differences between governmental and nongovernmental tortfeasors warrants specialized treatment where the City of Wilmington may incur liability for tortious conduct. Requiring prompt notice of a claim against the City facilitates fiscal planning and decreases the chance of a recurring injury by alerting officials to the existence of dangerous conditions. These effects are of citywide importance and are understandably within the concerns of the Delaware Legislature. Accordingly, this Court finds that a rational relationship exists that is sufficient to support the differing treatment accorded victims of Wilmington's torts and that the equal protection clause is therefore not offended.

█ Finally, plaintiff argues that enforcement of § 8124 constitutes a denial of a remedy in derogation of Article I, § 9 of the Delaware Constitution. For the reasons set forth in Part I of this opinion, the Court finds that § 8124 does not violate the provision.

## IV. CONCLUSIONS

For the reasons set forth above, summary judgment is hereby granted to defendants New Castle County, Talleyville Fire Company, and the Mayor and Council of Wilmington, together with the named city fire department personnel. Summary judgment is denied with respect to the named New Castle County paramedics.

IT IS SO ORDERED.

tion); *Sears v. Southworth,* Utah Supr., 563 P.2d 192, 193 (1977) (opportunity to promptly investigate and remedy defects, avoid unnecessary litigation, and minimize difficulties arising from changes in administration all constitute rational basis for classification); *Yotvat v. Roth,* 95 Wis.2d 357, 290 N.W.2d 524, 531 (1980) (notice statute has legitimate objective of protecting public funds from unwarranted disbursement by giving state timely opportunity to investigate).