Phyllis C. HINES, Mother and Administratrix of the Estate of Richard K. Hines, Jr., Plaintiff Below, Appellant,

v.

NEW CASTLE COUNTY, Defendant Below, Appellee.

No. 324, 1993.

Supreme Court of Delaware.

Submitted: April 19, 1994.
Decided: May 16, 1994.

---

Ben T. Castle (argued), Jan R. Jurden, and Maureen Dunn McGlynn, Young, Conaway, Stargatt & Taylor, Wilmington, for appellant.

B. Wilson Redfearn, and Joel R. Brown (argued), Tybout, Redfearn & Pell, Wilmington, for appellee.

Before MOORE, WALSH, and HOLLAND, JJ.

WALSH, Justice:

In this appeal from the Superior Court, we are asked to decide whether actual notice of a potential tort claim satisfies a county ordinance requiring that a plaintiff give written notice of such claim within one year of the date of the injury. The Superior Court ruled that the literal requirements of the ordinance were unambiguous and not subject to substantial compliance. We hold that where the county had actual notice of the incident and was not prejudiced by the failure to receive formal written notice of the potential tort claim, there has been "substantial compliance" with the notice ordinance and plaintiff's otherwise valid claim is not barred. Accordingly, the Superior Court's grant of summary judgment in favor of the county is REVERSED and the matter is remanded for further proceedings.

I

In this appeal from the grant of summary judgment in favor of the defendant, New Castle County (the "County"), we view the facts in the light most favorable to the plaintiff, as the party resisting summary judgment. *McCall v. Villa Pizza, Inc.*, Del.Supr., 636 A.2d 912, 912 (1994). So viewed, the facts reflect the following events. On August 2, 1990, at approximately 5:00 p.m., Richard K. Hines, Jr., ("Richard") a 20–year–old diabetic, collapsed and lost consciousness in his Wilmington home. Scott Hines ("Scott"), Richard's brother, was present at the time and attempted to contact the 911 Enhanced Emergency Number Service ("911 Service") operated by the County. There was an extended delay before County emergency personnel responded, despite repeated calls by Scott. Richard died shortly after his collapse. It is alleged that the County, through its employees, was negligent in staffing and maintaining the 911 Service and in responding to the emergency. It is further alleged that the delay in the response of the 911 Service was a direct and proximate cause of Richard's death.

On Sunday, September 9, 1990, the Wilmington News Journal published an article entitled "Time of the essence: Slow response on 911 emergency call may have cost 20–year–old's life." The article was prominently displayed and contained the date, time, place, and nature of Richard's death, along with details of Scott's attempts to contact the 911 Service and the response thereto. Shortly after the article's publication, Richard's mother, Phyllis C. Hines ("Mrs. Hines"), spoke with New Castle County Councilman Michael S. Purzycki ("Purzycki"), who informed her that, in his capacity as a member of the New Castle County Council, he intended to request an investigation of the 911 Service's handling of Richard's emergency.

Approximately a month later, Purzycki advised Mrs. Hines that an internal investigation of the incident indicated that the handling of Richard's emergency was "inadequate and unsatisfactory." Purzycki also

told Mrs. Hines that a confidential report had been prepared concerning the incident, but that he had been instructed not to send it to her because it concerned, *inter alia*, personnel matters and was not favorable to the County. Further, Mrs. Hines was to receive from Purzycki a chronological report from the 911 Service pertaining to Richard's emergency, but was subsequently informed by Purzycki that the County Attorney would need to review it to verify that nothing in the report was detrimental to the County.

During the same time period, Mrs. Hines was contacted by the host of a local radio talk show and asked to appear on the program to discuss the 911 Service. The talk show host also attempted to have County officials, including the chief of the County's Emergency Services, appear on the same show. The radio station was subsequently informed that, upon advice of the County Attorney that the incident could give rise to litigation, County employees would not be permitted to participate in the radio program.[1]

On July 31, 1992, counsel for Mrs. Hines and the County Attorney entered into an agreement tolling the statute of limitations, providing that no lawsuit would be filed for 120 days in order to permit the County to fully investigate the situation, and that the parties would negotiate in good faith to resolve the claims arising out of Richard's death. It is conceded that this was the first formal written notice of the claim. In the agreement, the County retained the right to assert as an affirmative defense plaintiff's failure to comply with the claim notice ordinance.

After settlement efforts proved unsuccessful, Mrs. Hines, in her capacity as Administratrix of Richard's estate, filed suit in the Superior Court for damages arising from the County's allegedly negligent handling of Richard's emergency. The County moved to dismiss the complaint, alleging that the claim was barred by the County and Municipal Tort Claims Act, 10 *Del.C.* § 4001 *et seq.* The County also asserted the bar of plaintiff's failure to comply with the notice provisions of § 1–11 of the New Castle County Code, which provides:

> No action, suit or proceeding shall be brought or maintained against New Castle County, the County Executive or the County Council of New Castle County for damages on account of physical injuries, death or injury to property by reason of the negligence of New Castle County or any of its departments, officers, agents or employees thereof unless the person by or on behalf of whom such claim or demand is asserted shall, within one (1) year from the happening of such injury, notify the county attorney in writing of the time, place, cause and character of the injuries sustained.

Since affidavits were submitted in support of the motion to dismiss, the court properly considered the motion as one for summary judgment pursuant to Superior Court Civil Rule 56. The court held that factual issues precluded a grant of summary judgment based upon the Tort Claims Act, but granted summary judgment in favor of the County due to plaintiff's failure to provide written notice within one year of the incident as required by § 1–11.

## II

The appellate standard of review of a trial court's grant of summary judgment is well-established. We review *de novo* the Superior Court's legal determination that, viewing the facts in the light most favorable to the non-moving party, Mrs. Hines, the moving party, New Castle County, has demonstrated that there are no disputed material issues of fact and that it is entitled to judgment as a matter of law. *McCall v. Villa Pizza, Inc.*, 636 A.2d at 913; *Merrill v. Crothall–American, Inc.*, Del.Supr., 606 A.2d 96, 99–100 (1992).

Mrs. Hines concedes that the written notice required by § 1–11 was not provided within one year of Richard's death. She argues, however, that the County's actual

---

1. Although not part of the record for summary judgment purposes, counsel for the County conceded at oral argument that the County had contacted its liability insurance carrier shortly after the incident to advise of a potential liability claim.

notice of the incident and potential tort claim, coupled with a lack of prejudice, establishes "substantial compliance" with the ordinance. The County argues that plaintiff's failure to provide written notice as required by the ordinance bars her claim, even if it had actual notice of the potential tort claim and suffered no prejudice.

Notice of claim ordinances are conceptually different from statutes of limitations. The latter are true statutes of repose intended to bar causes of action by reason of the passage of time. Notice of claim ordinances advance a particular purpose—to protect governmental bodies, and public funds, from claims which might be unknowable by reason of the broad range of governmental activities which impact the lives of the citizens. *See generally* 56 Am.Jur.2d *Municipal Corporations, Counties, and Other Political Subdivisions* § 686 (1971); 17 Eugene McQuillen, *The Law of Municipal Corporations* § 49.13 (3d ed. 1993). In Delaware, political subdivisions have been expressly authorized by the General Assembly to enact claims notice ordinances, provided the notice period is not less than one year. 10 *Del.C.* § 4013(c).[2]

While this Court has not directly considered the need for literal compliance with notice ordinances, we have noted that the purpose of such statutes is "to inform the [municipality] ... about the details of a claim." *City of Wilmington v. Spencer,* Del. Supr., 391 A.2d 199, 203 (1978). In *Celanese Corp. of America v. Mayor and Council of Wilmington,* Del.Super., 78 A.2d 249 (1950), a section of the Delaware Code required written notice to be served upon the Mayor and City Council prior to maintaining a tort action against the City of Wilmington. The plaintiff served written notice upon the Mayor's Secretary and the Board of Harbor Commissioners. In denying a motion to dismiss based upon a failure to comply with the notice ordinance, the Superior Court ruled that there had been "sufficient compliance" with the code. *Id.* at 252. The court focused upon whether the Mayor was actually notified of the claim, and concluded he likely was,

given his close relationship with the Secretary. *Id.* Thus, the failure to comply with the exact mandate of the applicable code did not bar plaintiff's claim since it was likely that the Mayor had actual notice of the pending action.

The *Celanese* decision is consistent with the holdings of courts in other jurisdictions, which focus upon the fulfillment of the purpose of notice statutes rather than the strictures of formal compliance. The purpose of notice statutes, as explained by the Supreme Court of Minnesota, is

> [t]o protect against dissipation of public funds by requiring that the municipality be promptly furnished with information concerning a claim against it so that full opportunity is provided to investigate it, to settle those of merit without litigation, and to correct any deficiency in municipal functions revealed by the occurrence.

*Kelly v. City of Rochester,* 304 Minn. 328, 231 N.W.2d 275, 276 (1975), *quoting Hirth v. Village of Long Prairie,* 274 Minn. 76, 143 N.W.2d 205, 207–08 (1966). *Accord Duesterhaus v. City of Edmond,* Okla.Supr., 634 P.2d 720, 723 (1981). *See also City of Wilmington v. Spencer,* 391 A.2d at 203; *Sadler v. New Castle County,* Del.Super., 524 A.2d 18, 28 (1987), *aff'd on other grounds,* Del.Supr., 565 A.2d 917 (1989).

Courts which recognize that substantial compliance advances the essential purpose of claim ordinances have permitted claims to proceed without timely written notice by the plaintiff where it is clear that the appropriate authorities were aware of the incident and investigated it. *See Kelly,* 231 N.W.2d 275 (plaintiff injured in municipal swimming pool accident was attended to by a lifeguard who filed a written report of accident with the head of recreation department); *Jenkins v. Board of Education of Minneapolis Special School Dist. No. 1,* 303 Minn. 437, 228 N.W.2d 265 (1975) (plaintiff injured in school fight was immediately given assistance by principal and nurse who completed a full report on the incident the following day and sent it to a district administrative official).

---

**2.** 10 *Del.C.* § 4013(c) provides:

Any political subdivision may enact a notice requirement by ordinance so long as said no-

tice requirement does not bar suit if notice is given within 1 year of occurrence.

While such reports do not necessarily provide notice that a lawsuit will be forthcoming, they "nevertheless indicate[ ] that the city [or county] was alerted to make whatever investigation it needed to in order to defend itself in a possible suit, which is supposed to be the reason for requiring adherence to the notice requirement in the first place." *Kelly,* 231 N.W.2d at 277. *Accord Mount v. City of Vermillion,* S.D.Supr., 250 N.W.2d 686, 689 (1977).

While the Minnesota notice statute implicated in the cited cases differs from the New Castle County ordinance, we find the reasoning of the Supreme Court of Minnesota to be logical and persuasive, and we follow it here. Therefore, we hold that in the absence of a showing of prejudice, actual notice on the part of the County or its responsible officials of sufficient facts to place the governing body of the County on notice of a possible claim constitutes substantial compliance with the notice ordinance here under review. *See Kelly,* 231 N.W.2d at 278. *Accord Duesterhaus,* 634 P.2d at 722–23.[3] To hold otherwise, "would make the notice requirement nothing more that a formal, procedural impediment to suit, of little purpose other than to void an otherwise valid claim." *Kelly,* 231 N.W.2d at 277–78.

On the facts as we apprehend them, it is clear that the County is not entitled to summary judgment. Viewing the facts in the light most favorable to the plaintiff, the record indicates that knowledge of the alleged deficiency in response to Richard's illness quickly reached the highest levels of County government and the incident was fully investigated. Furthermore, the County was obviously concerned about a potential lawsuit to the point of notification to its insurance carrier of the incident to ensure coverage. These facts, if established of record, demonstrate that the County had actual notice of the incident with all the particulars of "time, place, cause and character of the injuries sustained." New Castle County Code § 1–11. Such notice imparted within three months of the incident constitutes substantial and sufficient compliance with the notice ordinance as a matter of law. Accordingly, the Superior Court erred in granting the County's motion for summary judgment based upon non-compliance with the notice ordinance. The order granting summary judgment is therefore REVERSED and the matter REMANDED for further proceedings.

---

3. In *Sadler v. New Castle County,* Del.Super., 524 A.2d 18, 26–27 (1987), the Superior Court rejected plaintiff's argument that 10 *Del.C.* § 8124, a notice statute similar to the ordinance implicated here, required a showing of prejudice before it could bar a claim against the City of Wilmington. However, the court did not address the issue of substantial compliance. On appeal, this Court affirmed on other grounds and did not reach the notice issue. *Sadler v. New Castle County,* Del. Supr., 565 A.2d 917, 924 (1989). Our decision here that an absence of prejudice is an element of substantial compliance through actual notice is not inconsistent with the Superior Court's opinion in *Sadler* since the court there did not address this issue. The fact that prejudice is immaterial in a clear non-compliance case such as *Sadler* does not render it immaterial in a substantial compliance case such as this.