Richard J. Cardamons, J.
The defendant, Village of Ilion, has moved for summary judgment pursuant to CPLR 3212; the defendant, Village of Frankfort, has moved pursuant to CPLR 3211 (subd. [a], par. 7), on the grounds that the plaintiff’s complaint fails to state a cause of action against it.
This court rendered its written decision in this matter on June 10,1966. An order was entered thereon on June 23,1966. Subsequently, a motion was granted for reargument which was held on July 15, 1966. The decision of the court follows.
This action is brought by Flora A. Jones, as administratrix of the estate of Noreen Jones, deceased, to recover money damages for wrongful death, pain and suffering and funeral expenses. In addition to the Villages of Frankfort and Ilion, the County of Herkimer and Michael Bush, as Herkimer County Probation Officer, are named defendants, although the latter two are not parties to these motions.
The Village of Frankfort is located in the Town of Frankfort, and the Village of Ilion is located in the Town of German Flatts. Both municipalities are in Herkimer County and are adjacent to one another.
On August 27, 1964, Noreen Jones, a resident of the Village of Ilion, New York, was shot and killed by one Benedict DiPiazza, a resident of the Village of Frankfort, in the office of the Frankfort Village Clerk on Main Street in Frankfort, New York. The events leading to the decedent’s death commenced in March, 1961 when DiPiazza began making threatening phone calls to the decedent’s house. There followed incidents wherein DiPiazza, in his automobile, followed the decedent, assaulted her on the road, annoyed her on a bus (1962), prowled around her resi *132 deuce at night and attempted to enter, and made more threatening and abusive phone calls (1963). In January, 1964, DiPiazza entered the decedent’s home, uninvited, and annoyed decedent until ejected by decedent’s father. On February 3, 1964, he assaulted her on the street. As a result of this, a meeting was held on February 4, 1964, in the private law office of the Herkimer County District Attorney. DiPiazza, his father (who is the Police Judge of the Village of Frankfort), the decedent, and her father were present. During the course of the meeting DiPiazza punched the decedent, knocking her to the floor, and also struck the decedent’s father. This resulted in DiPiazza’s conviction by Samuel Lahey, Acting Police Judge, in the Police Court of Ilion, of assault in the third degree, on two counts. Sentence was suspended and DiPiazza was placed on probation for two years. Despite this, however, DiPiazza continued to threaten, harass and annoy the decedent until he shot and killed her on August 27,1964.
The plaintiff’s complaint alleges that Noreen Jones’ death was occasioned wholly through the negligence of the defendants and/or their agents and employees. It is alleged that the Villages of Frankfort and Ilion had knowledge of the fact that DiPiazza was placed on probation on March 13, 1964, after having been convicted of assaulting the decedent and her father in February, 1964; that while on probation and prior to August 27, 1964, they knew that, despite this probation he continued to threaten the decedent and menace her life. It is alleged that this conduct was communicated on a number of occasions to the defendant villages and that they refused to take any affirmative steps to revoke DiPiazza’s probation.
The defendant Village of Frankfort in its demand for a bill of particulars requested a specification of the acts and omissions as they relate to the Village of Frankfort, its servants, agents and/or employees, which the plaintiff claims constituted negligence, misconduct, misfeasance and nonfeasance. The demand also asked for a detailed statement (Item 4) setting forth times, dates, and methods by which the decedent was threatened or annoyed by DiPiazza and the times, methods and dates such were communicated to the officials, servants, agents, and/or employees of the Village of Frankfort. In response to these requests, the plaintiff in her bill of particulars sets forth in substance, merely eonelusory statements that the Village of Frankfort through its agents, servants and/or employees knew that DiPiazza was violating his probation and that he continued to threaten and annoy the decedent and that this knowledge was communicated to the officials of the Village of Frankfort but *133 that the Village of Frankfort officials did nothing. No specific facts are set forth. Item 4 of the demand was answered by-setting forth in 4a of the plaintiff’s bill of particulars a number of incidents involving harassment of decedent by DiPiazza commencing in March, 1961, and ending on February 4,1964, the date of the assault in the Herkimer County District Attorney’s private law office in Ilion. It is also claimed that on August 27,1964, sometime before the fatal shooting, DiPiazza threatened the decedent. In response to the demand (Item 4) as to how this information was communicated to the village officials of the Village of Frankfort, the plaintiff sets forth in 4(b) of the bill of particulars, a number of incidents which were directly communicated by the decedent’s family to the father of Benedict DiPiazza, sometimes referred to in the bill of particulars as Police Judge of the Village of Frankfort, and at other times referred to as the father of DiPiazza. It is claimed that these communications were made either by phone or by personal visit. The threat to the deceased on the date of her death, prior to her fatal shooting, was communicated to G-eorge Grates, the Acting Chief of Police of the Village of Frankfort, by the decedent’s father, Mr. Jones. In addition, the facts reveal that the decedent sought sanctuary, immediately prior to her death, in the village offices of the Village of Frankfort.
Upon the oral argument, the plaintiff’s attorney claimed that the violation of probation, the threats, and the annoyances to the decedent during the period from March 13, 1964, when DiPiazza was placed on probation, to August 27, 1964, when the decedent was fatally shot, were all known to the municipality of Frankfort because of the knowledge of DiPiazza’s father. The attorney for the Village of Frankfort asserted that the information obtained by Mr. DiPiazza was not obtained by him in his capacity as a public official, but was learned by him as DiPiazza’s father and that, therefore, such knowledge was not imputable to the Village of Frankfort.
As to the defendant Village of Ilion, plaintiff asserts that it had knowledge of all of the above facts. The moving papers state that in 1961, decedent’s mother talked with three Village of Ilion police officers about the threatening phone calls. She also called the village police station in the Spring and late Summer of 1962 to complain and was advised by the Ilion police to call the phone company. Plaintiff claims that the same pattérn of communication, by phone and personal visits, to the Ilion Police Department was followed in 1963 and 1964. It is alleged that Police Judge Curtis of Ilion was present at the assault *134 incident in the District Attorney’s private office and was the person who summoned the police. It is claimed that the Ilion police knew that as a part of the agreement to place him on probation, DiPiazza agreed never to bother the decedent again. Plaintiff alleges that the Police Judge of Ilion and the Ilion Police Department knew of DiPiazza’s violation of his probation. Plaintiff claims that a specific call was made on August 17, 1964, to the Ilion Police Department to report that DiPiazza was prowling around the decedent’s house and looking in the windows, but that no action was taken,
The defendant Village of Ilion contends that none of the actions complained of and alleged in the complaint and supporting papers were committed in the presence of the village police of the Village of Ilion and that none of these alleged acts were a felony. It further contends that no information was ever filed with the Village Police Department by the Jones family. It claims that the telephone call made on August 17, 1964, was acted upon by the village because a patrol car was dispatched on two separate occasions that evening to the Jones house in response to the calls but that DiPiazza could not be found in the area. In an affidavit filed by Maurice G-oldin, Chief of Police for the Village of Ilion, he sets forth the entries which appear on the Village of Ilion police docket. His affidavit reveals the altercation which occured on February 4,1964, in the private office of the District Attorney of Ilion. The next entry was on February 27, 1964, as follows: “ Call was made to the Utica State Hospital to notify them that they would be after Benedict DiPiazza after 1:15 p.m. On February 28, 1964, there was an entry that officers went to the Utica State Hospital after DiPiazza ”. The next entry is as follows: “On August 17, 1964, there were two calls recorded from Mr. and Mrs. Jones. At 11:50 p.m,, Mrs. Jones called and reported DiPiazza to be prowling around the home. A patrol car was sent to the area but no one was found. At 11:57 p.m., Mr. Jones called and reported DiPiazza was back again prowling around and peeking in windows, Two police cars were sent to the area but he could not be found ”. In the affidavit, Chief Goldin continues by denying that subsequent to March 13,1964, and up until the date of her death, he or any member of his department had any knowledge that DiPiazza was continuing to threaten and annoy Noreen Jones and that no threats or annoyances were communicated to the Village of Ilion Police Department. He also alleges that the administration of the probation of DiPiazza was not under the jurisdiction of the Ilion Police Department.
*135 Upon these facts as revealed in the pleadings, a motion was made by the defendant Village of Frankfort, pursuant to CPLR 3211 (subd. [a], par. 7), to dismiss the complaint for failure to state facts sufficient to constitute a cause of action against it.
In a motion to test the legal sufficiency of a complaint, the question posed is whether a cause of action has been stated, not whether it can be proved. In testing the complaint, all of the allegations of fact must be assumed to be true, and the pleadings are deemed to allege whatever cause of action can be implied from the statements by fair and reasonable intendment (Dulberg v. Mock, 1 N Y 2d 54 [1956]; Foley v. D’Agostino, 21 A D 2d 60 [1st Dept., 1964]; Kain v. Larkin, 141 N. Y. 144 [1894]).
The defendant, Village of Ilion, has moved for summary judgment pursuant to CPLR 3212.
The Court of Appeals has frequently stated that in determining whether a motion for summary judgment should be denied or granted, “issue-finding, rather than issue-determination, is the key to the procedure ” (Sillman v. Twentieth Century-Fox Film Corp., 3 N Y 2d 395, 404 [1957]). The purpose of the procedure is to sift out the evidentiary facts and determine from them the existence of an issue. Upon the motion, the testimony of the non-moving party must be accepted as true (Schneider v. Elvin, 22 Misc 2d 127 [1960]). The court must take the version of the facts which are most favorable to the nonmoving party (Jeram v. Nationwide Mut. Fire Ins. Co., 4 A D 2d 922 [3d Dept., 1957]). This is because the granting of a motion for summary judgment is the “ procedural equivalent of a trial ” (Falk v. Goodman, 7 N Y 2d 87, 91 [1959]). The motion must be denied whenever the issue “is fairly debatable” (Stone v. Goodson, 8 N Y 2d 8, 12 [1960]).
Whether any legal liability may result against these two village municipalities is the question posed.
The State, its counties, cities, towns and villages are answerable in civil suits for the wrongs of their officers and employees (Bernadine v. City of New York, 294 N. Y. 361 [1945]; Bloom v. Jewish Bd. of Guardians, 286 N. Y. 349, 352, 353 [1941]). A municipality is not liable, however, for its failure to provide general or adequate police or fire protection (Steitz v. City of Beacon, 295 N. Y. 51, 54 [1945]; Rivera v. City of Amsterdam, 5 A D 2d 637 [3d Dept., 1958]; Moch Co. v. Rensselaer Water Co., 247 N. Y. 160 [1928]; Murrain v. Wilson Line, 296 N. Y. 845, 847 [1947]).
Municipal liability may follow the violation of a duty imposed by statute which results in damages to an individual or class of persons for whose especial benefit the statute was enacted *136 (Runkel v. City of New York, 282 App. Div. 173 [2d Dept., 1953]; Runkel v. Homelsky, 286 App. Div. 1101 [2d Dept., 1955], affd. 3 N Y 2d 857 [1957]). Where no such duty can be found, liability docs not follow (Motyka v. City of Amsterdam, 15 N Y 2d 134 [1965]).
Municipal tort liability has been held to exist where there has been some special relationship existing between the defendant municipality and the plaintiff individual which imposes a common-law duty on the defendant to use due care toward the plaintiff (Schuster v. City of New York, 5 N Y 2d 75 [1958]). Where there is no special relationship, liability does not follow (Libertella v. Maenza, 16 A D 2d 831 [2d Dept., 1962]). As the Court of Appeals held in Schuster (supra, p. 81): “Such a duty * * * bespeaks no obligation enforcible in the courts to exercise the police powers of government for the protection of every member of the general public ”, but, the court continues (p. 82) citing Chief Judge Cardozo, in Moch v. Rensselaer Water Co. (supra), “ If conduct has gone forward to such a state that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward ”. The distinction between nonliability of a municipality for its failure to supply adequate police or fire protection and liability where there has been some relationship on the part of the defendant to the plaintiff creating a duty to use due care for the benefit of a particular person was recognized in Motyka v. City of Amsterdam (supra, p. 139). Here the conduct had gone forward to that stage when the Ilion village authorities conducted a criminal trial and convicted DiPiazza of assault in the third degree on two separate counts and instead of sentencing him to prison chose instead to place him on probation for a period of two years, following which it is alleged that the Probation Officer and the village authorities of Frankfort and Ilion were both informed and advised of his violation of that probation. These municipalities did not go forward, but, in effect, did nothing. Such failure on their part did not merely withhold a benefit but positively worked an injury. In language, particularly appropriate here, which held that a hospital corporation, acting as an agent of the State, did not share the State’s immunity, Judge Cardozo observed: “ It set its hand to the task, and must answer for the doing” (Murtha v. New York Homeopathic Med. Coll. & Flower Hosp., 228 N. Y. 183,186 [1920]).
Immunity is no longer bestowed on the municipality because it was engaged in the performance of a governmental function (Holmes v. County of Erie, 266 App. Div. 220 [4th Dept., 1943], *137 affd. 291 N. Y. 798 [1944]), or because the negligence alleged consisted in nonfeasance rather than misfeasance (McCrink v. City of New York, 296 N. Y. 99 [1947]; Meistinsky v. City of New York, 309 N. Y. 998 [1956]).
Whether the information which was communicated to Mr. DiPiazza by the Jones family, as well as his own personal knowledge of the facts, was imputable to the Village of Frankfort or was merely his own private information as a father, is not resolved by the papers presently before the court. A Police Justice is an elected officer of a village (Village Law, § 4-406, subd. 6; § 4-414) (formerly Village Law, §§ 43, 47). As a parent, Mr. DiPiazza may also have had responsibilities in connection with the adoption of reasonable measures to prevent his son from harming others (Linder v. Bidner, 50 Misc 2d 320 [Sup. Ct., Queens County, 1966]). Leaving this question aside, however, suffice it to say that the communication to Acting Police Chief Grates and the undisputed fact that the decedent sought sanctuary in the Village offices of Frankfort, sufficiently allege a legal cause of action against the village.
Insofar as the Village of Ilion is concerned, plaintiff’s papers indicate that the conditions of DiPiazza’s probation were known to officials of the village as well as to the Ilion Police Department. Section 927 of the Code of Criminal Procedure provides that a violation means (subd. [b]): “ failure to comply with any of the conditions of * * probation”. At least on August 17, 1964, the Village of Ilion Police Department’s own records reveal that they knew DiPiazza was annoying the Jones family late at night. This knowledge may have imposed upon the police officials of the village the duty of bringing such information to the attention of the County Probation Officer, or to take some other appropriate action under the circumstances. In any event, the village’s response under the facts and law previously cited creates triable issues of fact.
The picture presented here is one of constant threats, violence and harassment adequately and frequently brought to the attention of the village authorities in Ilion and Frankfort with no effective action taken by either of them.
The plaintiff was a person to whom a special duty of care was owed (Baker v. City of New York, 25 A D 2d 770 [2d Dept., 1966]). Whether the assault which resulted in the girl’s death was reasonably foreseeable following a violation of probation also presents a question of fact for the jury. (Benway v. City of Watertown, 1 A D 2d 465 [4th Dept., 1956].)
The Village of Frankfort’s motion to dismiss (CPLR 3211, subd. [a], par. 7) may also be treated as one for summary *138 judgment (CPLR 3211, subd. [c]). Generally, exercising this discretion serves to broaden the effect of res judicata, which would ordinarily be limited by a disposition under CPLR 3211 to those matters which are the subject of that particular motion, into an all-pervasive and blanket res judicata under summary judgment available under CPLR 3212. Such treatment seems inappropriate under the circumstances here where the defendant Village of Frankfort has moved only on the pleadings, without having interposed affidavits or other factual material.
The defendants Herkimer County and Michael Bush, as Herkimer County Probation Officer, did not join in the motions made by the Villages of Frankfort and Ilion. The defenses interposed by the two party defendants who have moved are, in substance, that they had no knowledge of DiPiazza’s violation of probation; and that without such knowledge, they cannot be charged with any duty to act. A similar defense may be envisioned from the nonmoving party defendants. Some or all of these defenses may prove to be meritorious as the issues are developed upon the trial of this action; but to eliminate any of the municipalities involved as a party defendant by motion at this stage in the litigation, particularly where complete discovery proceedings have not been had, appears to this court to he prejudicial to the plaintiff.
The complaint sets forth facts sufficient to constitute a cause of action against the Village of Frankfort. Accordingly, its motion is denied.
The Village of Ilion’s motion for summary judgment is denied because this court has found issues of fact raised in the moving papers.