412 S.E.2d 737

Ann RANDALL, Administratrix of the Estate of Sandra C. Johnson; Renna Denise Gibson, Individually; Nicole Rae Gibson, by Her Mother, Guardian, and Next Friend, Renna Denise Gibson; and Dennis C. Terry, Curator of Elizabeth Lee Johnson, Plaintiffs Below, Appellants,

v.

The FAIRMONT CITY POLICE DEPARTMENT; Eddie Devito, Chief of Police of the Fairmont City Police Department; and Patti McIntire, Dispatcher, Defendants Below, Appellees.

No. 20089.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1991.

Decided Dec. 12, 1991.

Monty L. Preiser, Preiser Law Offices, Charleston, for appellants.

Harry P. Waddell and Gordon H. Copland, Steptoe & Johnson, Clarksburg, for appellees.

McHUGH, Justice:

In this appeal by the plaintiffs below from a final order of the Circuit Court of Marion County, West Virginia, dismissing the action for failure to state a claim upon which relief may be granted, the primary substantive issue is the constitutionality of the qualified tort immunity provisions of the West Virginia Governmental Tort Claims and Insurance Reform Act of 1986, *W. Va. Code,* 29–12A–1 to 29–12A–18 [1986]. This Court agrees with the circuit court that the qualified tort immunity provisions of such Act are constitutional. The dispositive procedural issue, however, is the propriety of the dismissal of the action for failure to state a claim upon which relief may be granted. We believe such dismissal was improper in this case, due to a material factual issue raised by the complaint, specifically, whether a special relationship existed between the plaintiffs and the defendant city. If proved, such a relationship created duties of the city not covered by the immunity provisions of the Act. Accordingly, we affirm in part and reverse in part and remand this case for further proceedings consistent with this opinion.

## I.

### FACTS

On June 16, 1988, June 25, 1988, July 19 or 20, 1988, and August 14, 1988, Sandra C. Johnson made telephone calls to the Police Department of the City of Fairmont, Marion County, West Virginia, informing the police that Zachary Curtis Lewis had harassed and threatened her and that she feared for her safety and life. During this same period of time, Mr. Lewis had on one occasion physically injured Ms. Johnson to the extent that she required hospitalization.

Prior to August 15, 1988, Mr. Lewis was to appear at a judicial proceeding in Marion County on criminal charges, but he failed to appear. Thereupon, a warrant was issued for his arrest. Despite the fact that

an arrest warrant was outstanding for Mr. Lewis and despite the fact that Ms. Johnson had made the numerous telephone calls to the police, reporting the threats by Mr. Lewis toward her, the city police and other law enforcement officers took no action to apprehend and to arrest Mr. Lewis.

On August 15, 1988, Ms. Johnson, who was driving her automobile in Fairmont, noticed that Mr. Lewis was following her in his car. In fear, she drove to the Police Department of the City of Fairmont and parked her car directly beside the city police department building, on the city police department parking lot. She blew her automobile horn several times in an unsuccessful attempt to get the attention of the police inside the police department building. While she was in her automobile, Mr. Lewis approached on foot and, with a pistol, shot and killed Ms. Johnson. Ms. Johnson was pregnant at the time. Her baby daughter was delivered by cesarean section shortly thereafter. She died a couple of months later. At the same time Mr. Lewis shot and killed Ms. Johnson in her car, he also shot and physically injured one other adult passenger in Ms. Johnson's car and emotionally injured a minor passenger in the car.

This wrongful death/negligence action subsequently was brought on behalf of Ms. Johnson's estate and the other fatally or nonfatally injured persons against the Police Department of the City of Fairmont and its chief of police and dispatcher. The plaintiffs alleged that the defendants negligently failed to protect the plaintiffs from harm, despite having been alerted several times as to Mr. Lewis' threats against Ms. Johnson and despite Ms. Johnson's attempt to get police protection immediately prior to her death at the hands of Mr. Lewis.

The trial court, the Circuit Court of Marion County, granted the defendants' motion to dismiss for failure to state a claim, in light of the West Virginia Governmental Tort Claims and Insurance Reform Act of 1986, specifically, *W.Va.Code*, 29–12A–5(a)(5) [1986] and *W.Va.Code*, 29–12A–5(b) [1986].[1]

The plaintiffs have brought this appeal, challenging the constitutionality of the qualified tort immunity provisions of the West Virginia Governmental Tort Claims and Insurance Reform Act of 1986, under the "certain remedy" provision of the State *Constitution, W.Va. Const.* art. III, § 17, and under the state's implicit equal protection clause, *W.Va. Const.* art. III, § 10.[2] The plaintiffs also argue that the qualified tort immunity provisions of that Act, even if constitutional, do not apply to immunize the defendants from tort liability, as a matter of law, under the facts alleged in this case.

II.

### A. LOCAL GOVERNMENTAL IMMUNITY: COMMON LAW

In 1974 the Court, in syllabus point 4 of *Higginbotham v. City of Charleston*, 157 W.Va. 724, 204 S.E.2d 1 (1974), *overruled on another point in* syl. pt. 3, *O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504 (1977), concluded that "[a]rticle VI, Section 35 of the Constitution of West Virginia[,] which provides that the state shall never be made a defendant in any court of law or equity[,] does not apply to a

---

1. The material portion of *W.Va.Code*, 29–12A–5(a) [1986] sets forth this tort immunity for a political subdivision: "A political subdivision is immune from [tort] liability if a loss or claim results from: ... [¶] (5) ... the failure to provide, or the method of providing, police, law enforcement or fire protection[.]"

   *W.Va.Code*, 29–12A–5(b) [1986] contains this pertinent language on the tort immunity of an employee of a political subdivision: "An employee of a political subdivision is immune from [tort] liability unless ... [¶] (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities[.]" "Scope of employment" is defined as "performance by an employee acting in good faith within the duties of his or her office or employment or tasks lawfully assigned by a competent authority but does not include corruption or fraud." *W.Va.Code*, 29–12A–3(d) [1986].

2. These state constitutional provisions are discussed below in section II of this opinion. *See infra* notes 7 and 10 for the language of these provisions.

municipality and does not afford such municipality any protection from suit." Stated another way, state constitutional "sovereign" immunity from tort liability, which is an absolute immunity of the state, is not available to a municipality.

With respect to the qualified tort immunity which was available to a municipality at common law in this state for "governmental," as opposed to "proprietary," functions, it was held in syllabus point 10 of *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975), that "[t]he [qualified, common-law] rule of municipal governmental immunity [from tort liability] is now abolished in this State." Instead, in and after *Long v. City of Weirton*, "[a] municipal corporation shall be liable, as if a private person, for injuries inflicted upon members of the public which are proximately caused by its negligence in the performance of functions assumed by it." Syl. pt. 11, *Long*.

The Court in *Long* discussed the dubious origins of this common-law immunity and emphasized the incomprehensible nature, and inconsistent application, of the "governmental/proprietary" distinction. The Court did not base its overruling of this judicially created immunity upon any constitutional principles.

Finally, then Chief Justice Haden, writing for the Court in *Long*, invited the legislature to address this area: "Although, indeed, it would seem preferable for the Legislature to speak comprehensively on the subject, we do not wish to perpetuate bad law of judicial origin pending the fortuity

of action by the Legislature." 158 W.Va. at 783, 214 S.E.2d at 859.

Similarly, the Court abolished common-law governmental tort immunity for county commissions, syl. pt. 2, *Gooden v. County Commission*, 171 W.Va. 130, 298 S.E.2d 103 (1982), and for county boards of education, syl., *Ohio Valley Contractors v. Board of Education*, 170 W.Va. 240, 293 S.E.2d 437 (1982).

### B. LOCAL GOVERNMENTAL IMMUNITY: THE ACT

The legislature in 1986 enacted the West Virginia Governmental Tort Claims and Insurance Reform Act ("the Act"). "Its purposes are to *limit* [tort] liability of political subdivisions *and* [to] provide [tort] *immunity* to political subdivisions in *certain* instances *and* to *regulate* the costs and coverage of *insurance* available to political subdivisions for such liability." *W.Va. Code*, 29–12A–1 [1986] (emphasis added).[3] The basic structure of the Act is as follows.

Under the Act a political subdivision is stated to be immune generally from liability for damages in a civil action brought for death, injury or loss to persons or property allegedly caused by any act or omission of the political subdivision. *W.Va.Code*, 29–12A–4(b)(1) [1986]. The Act lists seventeen specific types of acts or omissions covered by the tort immunity available under the Act to a political subdivision. *W.Va.Code*, 29–12A–5(a)(1)–(17) [1986]. *See, e.g.*, the first paragraph of note 1, *supra*.

The Act also immunizes an employee of a political subdivision from tort liability, unless his or her acts or omissions were mani-

---

**3.** The legislature made these findings concerning the Act, in *W.Va.Code*, 29–12A–2 [1986]:

The Legislature finds and declares that the political subdivisions of this state are unable to procure adequate liability insurance coverage at a reasonable cost due to: The high cost in defending such claims, *the risk of liability beyond the affordable coverage, and the inability of political subdivisions to raise sufficient revenues for the procurement of such coverage without reducing the quantity and quality of traditional governmental services.* Therefore, it is necessary to establish certain immunities and limitations with regard to the [tort] liability of political subdivisions and their employees, to regulate the insurance industry provid-

ing liability insurance to them, and thereby permit such political subdivisions to provide necessary and needed governmental services to its citizens within the limits of their available revenues.
(emphasis added)

A "political subdivision" includes a municipality, a county commission, a county board of education and certain other local governmental entities listed in *W.Va.Code*, 29–12A–3(c) [1986].

For an overview of the Act see Note, *Tort Reform: The Reemergence of Local Government Immunity[—]The West Virginia Governmental Tort Claims and Insurance Reform Act of 1986*, 89 W.Va.L.Rev. 466 (1987).

festly outside the scope of employment or official responsibilities; or unless the employee's acts or omissions were with malicious purpose, in bad faith or in a wanton or reckless manner; or unless any statute expressly imposes liability upon the employee. *W. Va. Code*, 29–12A–5(b)(1)–(3) [1986].

On the other hand, the Act recognizes the tort liability of a political subdivision for acts *or omissions* in five fairly broad situations, *W. Va. Code*, 29–12A–4(c)(1)–(5) [1986], including liability in tort for damages "caused by the negligent performance of acts by their [political subdivisions'] employees while acting within the scope of employment[,]" *W. Va. Code*, 29–12A–4(c)(2) [1986].[4] For these situations where liability attaches, the Act imposes a $500,000 limit of liability for the noneconomic loss of any one person, *W. Va. Code*, 29–12A–7(b) [1986], and disallows punitive damages, *W. Va. Code*, 29–12A–7(a) [1986].[5]

The Act explicitly provides that "[t]he purchase of liability insurance ... by a political subdivision does not constitute a waiver of any immunity it may have pursuant to this article or [of] any defense of the political subdivision or its employees." *W. Va. Code*, 29–12A–16(d) [1986]. The liability insurance could be purchased by a political subdivision "with respect to its potential liability and that of its employ-

ees" under the Act. *W. Va. Code*, 29–12A–16(a) [1986].

Finally, the Act contains provisions regulating the costs and coverage of liability insurance available to political subdivisions. *W. Va. Code*, 29–12A–17 [1986].

The history in West Virginia of the qualified immunity, from tort liability, available to municipalities and certain other political subdivisions of the state is consistent with the typical pattern in most of the other jurisdictions: a broad, often total, abrogation by the judiciary of the state common-law local governmental tort immunity, followed soon thereafter by the enactment of governmental tort claims legislation, typically providing in substance for a broad reinstatement of local governmental immunity from tort liability. *See* 5 F. Harper, F. James & O. Gray, *The Law of Torts* § 29.-11, at 692 & nn. 17–18 (2d ed. 1986 & Supp.1991); 2 S. Speiser, C. Krause & A. Gans, *The American Law of Torts* § 6:8 (1985); 57 Am.Jur.2d *Municipal, County, School, and State Tort Liability* § 29 (1988).[6]

### C. "CERTAIN REMEDY"

The plaintiffs in the present case argue first that the qualified tort immunity provisions of the Act, particularly *W. Va. Code*, 29–12A–5(a)(5) [1986], *see supra* note 1, violate the "certain remedy" provision set forth in article III, section 17 of the *Constitution of West Virginia*. We disagree.[7]

---

**4.** Other instances where a political subdivision's tort liability is recognized under *W. Va. Code*, 29–12A–4(c) [1986] involve: an employee's negligent operation of a vehicle within the scope of employment; or a political subdivision's negligent maintenance of its property; or the negligence of employees occurring within or on a political subdivision's grounds or buildings; or instances where liability is expressly imposed upon a political subdivision by any statute. Each of these is said to be subject to the specific immunities set forth in *W. Va. Code*, 29–12A–5(a) [1986].

**5.** This case does not involve the validity of the "cap" on noneconomic losses or of the preclusion of punitive damages under the Act.

This case also does not involve the validity of the provisions of the Act altering the common-law rule of joint and several liability in tort. *See W. Va. Code*, 29–12A–7(d) [1986].

**6.** For compilations of the various jurisdictions' governmental tort claims acts, with selected case annotations, see *Restatement (Second) of Torts* § 895B (Appendix 1982); 57 Am.Jur.2d *Municipal, County, School, and State Tort Liability* § 129 (1988). For a somewhat dated compilation of these statutes see *Owen v. City of Independence*, 445 U.S. 622, 680–83, 100 S.Ct. 1398, 1430–31, 63 L.Ed.2d 673, 712–13 (1980) (Powell, J., dissenting, joined by Burger, C.J., Stewart & Rehnquist, JJ.). *See generally* 18 E. McQuillin, *The Law of Municipal Corporations* §§ 53.02b, 53.03 (3d ed. rev. 1984); *Prosser and Keeton on the Law of Torts* § 131, at 1052, 1055 & n. 40 (W. Keeton 5th ed. 1984); *Restatement (Second) of Torts* § 895C comment i (1977).

**7.** The relevant portion of *W. Va. Const.* art. III, § 17 is as follows: "The courts of this State shall be open, and every person, for an injury done to him [or her], in his [or her] person, property or reputation, shall have remedy by due course of

■ The governing principles in this area are set forth in syllabus points 4–5 of *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 408 S.E.2d 634 (1991):

4. 'There is [ordinarily] a presumption of constitutionality with regard to legislation. However, when a legislative enactment either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication of cases, then the certain remedy provision of Article III, Section 17 of the West Virginia Constitution is implicated.' Syl. pt. 6, *Gibson v. West Virginia Department of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991).

5. When legislation either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication, thereby implicating the certain remedy provision of article III, section 17 of the *Constitution of West Virginia*, the legislation will be upheld under that provision if, first, a reasonably effective alternative remedy is provided by the legislation or, second, if no such alternative remedy is provided, the purpose of the alteration or repeal of the existing cause of action or remedy is to eliminate or curtail a clear social or economic problem, and the alteration or repeal of the existing cause of action or remedy is a reasonable method of achieving such purpose.

■ We stressed in *Lewis* that the "certain remedy" provision itself states that the "remedy" constitutionally guaranteed "for an injury done" to protected interests is qualified by the words, "by due course of law[,]" thereby extending considerable latitude to the legislature. In addition, we recognized that the general authority of the legislature to alter or repeal the common law is expressly conferred by article VIII, section 13 of the *Constitution of*

West Virginia. *Lewis*, 185 W.Va. at 693, 408 S.E.2d at 644.[8]

This Court in *Lewis* observed that the economic basis underlying an action for tort damages indicates that the right to bring such an action is not a fundamental right in the sense that any limitation on that right requires strict scrutiny under the certain remedy provision. Instead, the legislature may reasonably consider clear economic or social conditions in this state in deciding to alter or repeal the common law. *Lewis*, 185 W.Va. at 693, 694, 408 S.E.2d at 644, 645.

In the case now before this Court, the legislature has found that political subdivisions in this state have been unable to raise sufficient revenues to procure affordable liability insurance coverage without reducing the quantity and quality of traditional governmental services. *See supra* note 3. We believe this finding states a clear economic problem and that the method selected by the legislature to eliminate or curtail this clear economic problem, specifically, the broad, but not total, reinstatement of local governmental tort immunity, is a reasonable method of achieving the legislative objective. In this regard we note that the Act imposes liability for certain functions and, in section 4(a), avoids the "governmental/proprietary" distinction which the Court in *Long* believed was so nebulous. While we are sensitive to the interests of those persons injured by political subdivisions, the legislature has responded reasonably to the Court's invitation in *Long* to speak comprehensively on this subject.

Our holding is supported by almost all of the authorities elsewhere. Virtually every reported case involving a "certain remedy" challenge to the broad, legislative reinstatement of local governmental tort immunity, after judicial abrogation of such immunity originating at common law, has *rejected*

law[.]" This provision has sometimes been called the "open courts" or "access-to-courts" provision. *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 693 n. 13, 408 S.E.2d 634, 644 n. 13 (1991).

**8.** *W.Va. Const.* art. VIII, § 13 in its entirety states:

Except as otherwise provided in this article, such parts of the *common law,* and of the laws of this State as are in force on the effective date of this article [1872] and are not repugnant thereto, shall be and continue the law of this State *until altered or repealed by the legislature.*
(emphasis added)

that challenge. *See, e.g., Hardin v. City of DeValls Bluff,* 256 Ark. 480, 508 S.W.2d 559 (1974); *Sadler v. New Castle County,* 524 A.2d 18, 25 (Del.Super.Ct.1987), *aff'd,* 565 A.2d 917, 923–24 (Del.1989); *Davis v. Chicago Housing Authority,* 136 Ill.2d 296, 144 Ill.Dec. 224, 226–27, 555 N.E.2d 343, 345–46 (1990); *Adams v. City of Peoria,* 77 Ill.App.3d 683, 33 Ill.Dec. 183, 185–86, 396 N.E.2d 572, 574–75 (1979); *Carroll v. County of York,* 496 Pa. 363, 437 A.2d 394, 396 (1981); *Robson v. Penn Hills School District,* 63 Pa.Cmwlth. 250, 437 A.2d 1273, 1276–77 (1981); *Stout v. Grand Prairie Independent School District,* 733 S.W.2d 290, 293–95, 296–97 (Tex.Ct.App. 1987), *writ of error ref'd (no reversible error)* (Tex. Oct. 7, 1987), *cert. denied,* 485 U.S. 907, 108 S.Ct. 1082, 99 L.Ed.2d 241 (1988). *See also* syl. pts. 1, 2 & 4, *Brown v. Wichita State University,* 219 Kan. 2, 547 P.2d 1015 (upholding legislative restoration of governmental tort immunity previously abolished judicially, but involving immunity of *state* ), *opinion on reh'g, appeal dismissed for want of jurisdiction sub nom., Bruce v. Wichita State University,* 429 U.S. 806, 97 S.Ct. 41, 50 L.Ed.2d 67 (1976); *Cords v. State,* 62 Wis.2d 42, 214 N.W.2d 405, 410 (1974) (state's constitutionally derived governmental tort immunity may, under constitution, be waived by legislature, but until so waived, immunity does not offend "certain remedy" provision).[9]

Consistent with the great weight of authority, we hold that the qualified tort immunity provisions of the West Virginia Governmental Tort Claims and Insurance Reform Act of 1986, *W. Va. Code,* 29–12A–1 to 29–12A–18, do not violate the certain remedy provision of article III, section 17 of the *Constitution of West Virginia.*

## D. EQUAL PROTECTION

The plaintiffs next argue that the qualified tort immunity provisions of the Act, particularly, *W. Va. Code,* 29–12A–5(a)(5) [1986], *see supra* note 1, violate state equal protection principles, which are set forth implicitly in article III, section 10 of the *Constitution of West Virginia.* We disagree.[10]

■ In addressing a claim that legislation is unconstitutional, we start with the fundamental precept that the powers of the legislature are almost plenary: "The Constitution of West Virginia being a restriction of power rather than a grant thereof, the legislature has the authority to enact any measure not inhibited thereby." Syl. pt. 1, *Foster v. Cooper,* 155 W.Va. 619, 186 S.E.2d 837 (1972).[11] Moreover, in light of the constitutionally required principle of the separation of powers among the judicial, legislative and executive branches of state government, *W. Va. Const.* art. V, § 1, courts ordinarily presume that legislation is constitutional, and the negation of legislative power must be shown clearly:

'In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. [*W. Va. Const.* art. V, § 1.] Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality

---

9. *But see Oien v. City of Sioux Falls,* 393 N.W.2d 286, 290–91 (S.D.1986) (statute extending state's constitutional sovereign immunity to municipalities acting in proprietary capacity violated "open courts" provision; "open courts" provision in essence "freezes" common law as of time state constitution was adopted, and municipalities at that time under South Dakota common law did not share state's constitutional sovereign immunity when municipalities acted in "proprietary" capacity). Our *Lewis v. Canaan Valley Resorts, Inc.* opinion, however, rejects this concept of "freezing" the common law against any statutory alteration or repeal.

10. *W. Va. Const.* art. III, § 10 states: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his [or her] peers." This state's constitutional equal protection principles are implicitly part of this state due process clause. Syl. pt. 4, *Israel v. West Virginia Secondary Schools Activities Commission,* 182 W.Va. 454, 388 S.E.2d 480 (1989).

11. The *Constitution of the United States,* particularly the fourteenth amendment thereto, may also inhibit the legislature from enacting certain legislation.

of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.' Syl. pt. 1, *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965).

Syl. pt. 2, *West Virginia Public Employees Retirement System v. Dodd,* 183 W.Va. 544, 396 S.E.2d 725 (1990). *Accord,* syl. pt. 1, *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 408 S.E.2d 634 (1991).

■ Accordingly, a facial challenge to the constitutionality of legislation is the most difficult challenge to mount successfully. The challenger must establish that no set of circumstances exists under which the legislation would be valid; the fact that the legislation might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. *Lewis,* 185 W.Va. at 691, 408 S.E.2d at 641.

■ We now turn specifically to equal protection challenges to legislation. Most legislative classifications, including those which involve economic rights, are subjected to a minimum level of scrutiny, the traditional equal protection concept that the legislative classification will be upheld if it is reasonably related to the achievement of a legitimate state purpose. We recently reformulated this "rational basis" type of equal protection analysis in syllabus point 4 of *Gibson v. West Virginia Department of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991):

' "Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classifi-

cation is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause." Syllabus Point 7, [as modified,] *Atchinson v. Erwin,* [172] W.Va. [8], 302 S.E.2d 78 (1983).' Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,* [174] W.Va. [538], 328 S.E.2d 144 (1984).

*Accord,* syl. pt. 2, *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 408 S.E.2d 634 (1991).[12]

■ A corollary principle is that the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. *Lewis,* 185 W.Va. at 692, 408 S.E.2d at 642.

■ Our research has disclosed that almost all, if not all, of the reported precedents from the other jurisdictions, applying a "rational basis" equal protection analysis, have *rejected* equal protection challenges to comprehensive, statewide governmental tort claims acts, where the challenges were based upon the *argument* that the broad immunity granted to governmental tortfeasors, as opposed to nongovernmental tortfeasors, is not a rationally based distinction in furtherance of a legitimate state interest. *See, e.g., Stone v. State,* 106 Cal. App.3d 924, 165 Cal.Rptr. 339, 343 (1980) (involving alleged failure to provide sufficient police protection to public), *opinion as modified; Sadler v. New Castle County,* 524 A.2d 18, 24–25 (Del.Super.Ct.1987), *aff'd,* 565 A.2d 917, 923–24 (Del.1989); *Davis v. Chicago Housing Authority,* 136 Ill.2d 296, 144 Ill.Dec. 224, 226–27, 555 N.E.2d 343, 345–46 (1990); syl. pt. 4, *Cross v. City of Kansas City,* 230 Kan. 545, 638 P.2d 933 (1982); *Garcia v. Albuquerque Public Schools Board of Education,* 95 N.M. 391, 622 P.2d 699, 702 (Ct.App.1980), *writ quashed,* 95 N.M. 426, 622 P.2d 1046 (1981); *Carroll v. County of York,* 496 Pa.

12. For a brief discussion of the "strict scrutiny" and so-called "middle-tier" tests for equal protection analysis of certain statutory classifica-

tions see *Lewis,* 185 W.Va. at 691, 408 S.E.2d at 641. Neither of those two tests is applicable here.

363, 437 A.2d 394, 396–97 (1981); *Robson v. Penn Hills School District*, 63 Pa.Cmwlth. 250, 437 A.2d 1273, 1276 (1981); *Stout v. Grand Prairie Independent School District*, 733 S.W.2d 290, 295–96, 297–98 (Tex. Ct.App.1987), *writ of error ref'd (no reversible error)* (Tex. Oct. 7, 1987), *cert. denied*, 485 U.S. 907, 108 S.Ct. 1082, 99 L.Ed.2d 241 (1988).

This Court, too, believes that the "rational basis" test for equal protection analysis is applicable here, for, as stated previously, the *economic* basis underlying an action for tort damages indicates that the right to bring such an action is not a fundamental right for "certain remedy," or for equal protection, purposes. We believe that the qualified tort immunity provisions of the Act are rationally based and reasonably relate to a proper governmental purpose, specifically, *see supra* note 3, to stabilize the political subdivisions' ability to obtain affordable liability insurance coverage by defining the risks to be covered. *Robson v. Penn Hills School District*, 63 Pa.Cmwlth. 250, 437 A.2d 1273, 1276 (1981).

Accordingly, this Court holds that the qualified tort immunity provisions of the West Virginia Governmental Tort Claims and Insurance Reform Act of 1986, *W.Va. Code*, 29–12A–1 to 29–12A–18, do not violate the equal protection principles of article III, section 10 of the *Constitution of West Virginia*.

Similarly, we believe that the qualified immunity from tort liability available under *W.Va.Code*, 29–12A–5(b) [1986] to an employee of a political subdivision does not violate equal protection principles. Such employee immunity is consistent generally with the political subdivision's qualified immunity, and the employee immunity is reasonable in scope because the Act imposes employee *liability* for tort damages proximately caused by the employee's acts or omissions which were manifestly outside the scope of employment or official respon-

sibilities or which were with malicious purpose, in bad faith, or in a wanton or reckless manner, *W.Va.Code*, 29–12A–5(b)(1)–(2) [1986]. *See also Pritchard v. Arvon*, 186 W.Va. 445, 413 S.E.2d 100 (1991).

## III.

## "SPECIAL RELATIONSHIP" LIABILITY UNDER THE ACT

The plaintiffs finally argue that the qualified tort immunity provisions of the Act, even if constitutional, do not apply to immunize the defendants from tort liability, as a matter of law, under the facts alleged in this case. We agree.

Under the Act political subdivisions are liable for tort damages proximately caused by, *inter alia*, "the *negligent* performance of acts by their employees while acting within the scope of employment." *W.Va. Code*, 29–12A–4(c)(2) [1986] (emphasis added). The primary element of negligence is a breach of a *duty*. In the context of an alleged failure of a local governmental entity to provide any, or sufficient, fire or police protection to a particular individual, the local governmental entity's duty is defined at common law by the public duty doctrine.

The public duty doctrine is that a local governmental entity's liability for nondiscretionary (or "ministerial" or "operational") functions may not be predicated upon the breach of a general duty owed to the public as a whole; instead, only the breach of a duty owed to the particular person injured is actionable. *Wolfe v. City of Wheeling*, 182 W.Va. 253, 256, 387 S.E.2d 307, 310 (1989).[13] As a specific example of the public duty doctrine, the duty to fight fires or to provide police protection runs ordinarily to all citizens and is to protect the safety and well-being of the public at large; therefore, absent a special

---

**13.** At common law a local governmental entity is immune from tort liability for acts or omissions constituting the exercise of a "discretionary" function, that is, the exercise of a legislative or judicial function or the exercise of an administrative function involving the determi-

nation of fundamental governmental policy. *Restatement (Second) of Torts* § 895C(2)(a)–(b) (1977). The Act incorporates this common-law rule. *See, e.g., W.Va.Code*, 29–12A–5(a)(1)–(2), (4) [1986].

duty to the plaintiff(s), no liability attaches to a municipal fire or police department's failure to provide adequate fire or police protection. *Wolfe*, 182 W.Va. at 256, 387 S.E.2d at 310.

In this situation, then, it is critical for a plaintiff to establish a special duty owed to him or her by the local governmental entity: "If a special relationship exists between a local governmental entity and an individual which gives rise to a duty to such individual, and the duty is breached causing injuries, then a suit may be maintained against such entity." Syl. pt. 3, *Benson v. Kutsch*, 181 W.Va. 1, 380 S.E.2d 36 (1989). *Accord*, syl. pt. 1, *Wolfe v. City of Wheeling*, 182 W.Va. 253, 387 S.E.2d 307 (1989).

In syllabus point 2 of *Wolfe v. City of Wheeling*, 182 W.Va. 253, 387 S.E.2d 307 (1989), this Court set forth a four-part general test for determining whether a local governmental entity, in the exercise of a nondiscretionary function, owes an actionable special duty to a particular individual, as opposed to a mere general duty to the public as a whole for which no cause of action lies:

> To establish that a special relationship exists between a local governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking.

The pertinent question under the Act is whether *W.Va.Code*, 29–12A–5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for "the failure to provide, or the method of providing, police, law enforcement or fire protection[,]" incorpo-rates implicitly the common-law special duty rule and does not immunize a breach of a special duty to provide such protection to a particular individual. Guiding us in answering this question in the affirmative is the general rule of construction in governmental tort legislation cases favoring liability, not immunity: unless the legislature has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail. *Lopez v. Southern California Rapid Transit District*, 40 Cal.3d 780, 710 P.2d 907, 915, 221 Cal.Rptr. 840, 848 (1985). *See also Huey v. Town of Cicero*, 41 Ill.2d 361, 243 N.E.2d 214 (1968) (local governmental tort act; failure to provide police protection; applying special duty analysis). We believe that the legislature has not clearly provided for immunity regardless of the existence of a special relationship/special duty.

Accordingly, this Court holds that *W.Va. Code*, 29–12A–5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for "the failure to provide, or the method of providing, police, law enforcement or fire protection[,]" is coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole. Lacking a clear expression to the contrary, that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual.

In syllabus point 3 of *Wolfe v. City of Wheeling*, 182 W.Va. 253, 387 S.E.2d 307 (1989), we concluded, in part, that "[t]he question of whether a special duty arises to protect an individual from a local governmental entity's negligence in the performance of a nondiscretionary ... function is ordinarily a question of fact for the trier of the facts." Moreover, "[o]n appeal of a dismissal based on granting a motion pursuant to West Virginia Rules of Civil Procedure 12(b)(6), the allegations of the complaint must be taken as true." Syl. pt. 1, *Wiggins v. Eastern Associated Coal*

*Corp.,* 178 W.Va. 63, 357 S.E.2d 745 (1987). *Accord, Sattler v. Bailey,* 184 W.Va. 212, 216 n. 5, 400 S.E.2d 220, 224 n. 5 (1990).[14] We believe the complaint in the present case, while stated in very general terms, sufficiently alleges the existence of the four factors for establishing a special relationship as set forth in syllabus point 2 of *Wolfe v. City of Wheeling,* quoted previously.[15]

A very similar case is *Jones v. County of Herkimer,* 51 Misc.2d 130, 272 N.Y.S.2d 925 (Sup.Ct.1966). In that case an individual had physically and emotionally harassed and threatened the decedent for about three and one-half years, and the police departments of the two defendant municipalities had been notified on numerous occasions of the harassment and threats. In addition, the final threat to the decedent's life had been communicated to the acting police chief of one of the defendant municipalities on the date that she was fatally shot. Finally, the decedent had sought sanctuary, immediately prior to her death, in an office of one of the defendant municipalities. The court denied the defendants' respective motions to dismiss for failure to state a claim and for summary judgment. The court held that the complaint sufficiently alleged a special relationship/special duty and presented triable issues of fact on that claim.

This Court likewise concludes that the complaint in this case sufficiently states a claim against the defendant city under *W.Va.Code,* 29–12A–4(c)(2) [1986], on the negligent performance of acts by employees of political subdivisions while acting within the scope of employment.[16]

The complaint also sufficiently states a related but alternative claim against the defendant employees under *W.Va.Code,* 29–12A–5(b)(1) [1986]. In the distinct alle-

gations against the employees, the complaint alternatively alleges that the employees' omissions were manifestly outside the employees' scope of employment by ignoring an obviously dangerous situation, contrary to the duties of their employment.

### IV.

### CONCLUSION

We affirm the circuit court's ruling that the tort immunity provisions of the Act are constitutional, for the reasons set forth in subsections II(C)–(D) of this opinion. On the other hand, we reverse the circuit court's dismissal for failure to state a claim, for the reasons set forth in section III of this opinion, and remand this case for further proceedings consistent herewith.

Affirmed in part; reversed in part and remanded.

---

14. Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure* authorizes a motion to dismiss for the "failure to state a claim upon which relief can be granted[.]"

15. We, of course, do not intimate any opinion on whether the plaintiffs will be able to establish these allegations with sufficient evidence.

16. We note that the complaint also sufficiently states a claim against the defendant city under

*W.Va.Code,* 29–12A–4(c)(4) [1986], which provides for the tort liability of a political subdivision for damages caused by the negligence of an employee which occurs within or on the grounds or buildings, except detention facilities, which are used by the political subdivision. The fatal shooting here occurred directly beside the city police department building, despite the fact that the decedent blew her automobile horn several times.