# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Karen Daugherty, Personal**
**Representative of the Estates of Jessica**
**Dawn Daugherty and Jeremy Ray Daugherty,**
**Plaintiff Below, Petitioner**

**vs.)  No. 21-0780** (McDowell County 18-C-123)

**McDowell County Commission; Rick**
**Jones, McDowell County Deputy Sheriff;**
**Ron Blevins, McDowell County Deputy Sheriff;**
**and Michael Kennedy,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner appeals the circuit court's September 8, 2021, order directing the entry of a final judgment in favor of Respondents McDowell County Commission, McDowell County Deputy Sheriff Rick Jones, and McDowell County Deputy Sheriff Ron Blevins.[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. Proc. 21.

Petitioner's decedent Jessica Daugherty obtained a domestic violence protective order ("DVPO") for both her and her son Jeremy Daugherty's protection against her then-husband, Michael Kennedy ("Defendant Kennedy").[2] Defendant Kennedy violated that DVPO a few days

---

[1] Petitioner appears by counsel Lonnie C. Simmons and Eric J. Buckner, and respondents appear by counsel Wendy E. Greve and Daniel J. Burns. Amici curiae, West Virginia Coalition Against Domestic Violence and The YWCA Charleston Resolve Family Abuse Program, appear by counsel Mike Kelly in support of petitioner.

[2] Defendant Kennedy is a party to this action, but he makes no appearance before this Court as petitioner's claims against him remain pending in the circuit court. The circuit court's order granting summary judgment to respondents was entered under Rule 54(b) of the West Virginia Rules of Civil Procedure as a final judgment as to those parties only.

1

before Thanksgiving in 2016 by going to Ms. Daugherty's home, threatening her with a gun, demanding money, and forcing her to drive him in her car from her home in McDowell County, West Virginia, to his home in Wyoming County, West Virginia. At her family's urging, Ms. Daugherty called 9-1-1 at approximately 5:30 p.m. the day after the confrontation, which was also the day before Thanksgiving. She requested that an officer return her call so that she could document the violation. Respondent Rick Jones and/or Respondent Ron Blevins, McDowell County Sheriff's deputies, followed up with Ms. Daugherty. Ms. Daugherty said that she did not want to press charges and reiterated that she merely wanted to document the violation. The officers told her that, due to the upcoming Thanksgiving holiday, an arrest warrant could not be obtained until Monday. Ms. Daugherty relayed this information to her family members, who encouraged her to stay elsewhere. Ms. Daugherty chose to remain in her home, so her family members assisted with installing security cameras and provided her with a gun, ammunition, and instructions for using the gun. On the Sunday following Thanksgiving, shortly after 1:00 a.m., Defendant Kennedy returned to Ms. Daugherty's residence and shot her and her son. Her son died instantly. Ms. Daugherty lived for a few months but ultimately succumbed to her gunshot injury. Defendant Kennedy was convicted of these murders.

Petitioner, as the representative of the Daughertys' respective estates, sued Respondent McDowell County Commission and Respondents Jones and Blevins, asserting that they were liable for the Daughertys' deaths. Petitioner argued that respondents owed a special duty to protect the Daughertys from Defendant Kennedy, and she also asserted that the actions of Respondents Jones and Blevins were committed or omitted in bad faith or in a wanton or reckless manner. The circuit court granted respondents summary judgment. It found that petitioner had failed to demonstrate a genuine issue of material fact as to the existence of a special duty or as to whether the officers' conduct was wanton or reckless and that, therefore, her claims were barred by the public duty doctrine and/or the statutory immunity set forth in the Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-1 to -18.

On appeal, petitioner claims that the circuit court erred in granting respondents summary judgment. The crux of petitioner's claim of a special duty is that respondents assumed an affirmative duty to act on behalf of the Daughertys by virtue of the DVPO, her communications with respondents, and regulations outlining law enforcement response to domestic violence.[3] Petitioner asserts further that respondents knew that inaction could lead to harm due to their training and experience and in view of certain realities attendant to domestic violence situations,[4]

---

[3] *See* W. Va. Code R. §§ 149-3-1 to -12.

[4] Petitioner notes, for instance, that a perpetrator of domestic violence is likely to return to the victim's home, and she highlights respondents' knowledge that Defendant Kennedy's name was raised in connection with two other murders. Specifically, Defendant Kennedy's name was raised in connection with Ms. Daugherty's grandmother's murder and the murder of one of Defendant Kennedy's neighbors. As of the date the circuit court entered its summary judgment

(continued . . .)

and that the Daughertys justifiably relied on respondents' affirmative undertaking. In support of her claim that there is a genuine issue of material fact as to whether Respondents Jones and Blevins acted wantonly or recklessly, petitioner highlights that the officers knew that a DVPO was in effect, knew that Defendant Kennedy had violated it, and knew that Defendant Kennedy was a person of interest in other unsolved murders, yet they "intentionally decided not to take any action."

As we have previously recognized, "[u]nder the public duty doctrine, a government entity or officer cannot be held liable for breaching a general, non-discretionary duty owed to the public as a whole." *W. Va. State Police v. Hughes*, 238 W. Va. 406, 412, 796 S.E.2d 193, 199 (2017). In short, because the "government owes a duty to the public in general, it does not owe a duty to any individual citizen," so "no private liability attaches when a . . . police department fails to provide adequate protection to an individual." *Id.* (citation omitted). In addition, under the Governmental Tort Claims and Insurance Reform Act, political subdivisions enjoy immunity from liability for "the failure to provide, or the method of providing, police, law enforcement or fire protection."[5] W. Va. Code § 29-12A-5(a)(5). This immunity "is coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole." Syl. Pt. 8, in part, *Randall v. Fairmont City Police Dep't*, 186 W. Va. 336, 412 S.E.2d 737 (1991).

But an exception to the public duty doctrine exists where there is a "special relationship" (or a "special duty") between the governmental entity or political subdivision and a specific individual, *Hughes*, 238 W. Va. at 412, 796 S.E.2d at 199, and the special relationship exception is incorporated into West Virginia Code § 29-12A-5(a)(5). *Randall*, 186 W. Va. at 339, 412 S.E.2d at 740, Syl. Pt. 8, in part ("Lacking a clear expression to the contrary, that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual."). Thus, for petitioner's claim to survive summary judgment, she must have made a sufficient evidentiary showing on the four elements necessary to establish the existence of a special relationship:

> (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking.

---

order, these murders remained unsolved, and Defendant Kennedy had not been charged with any crime related to them.

[5] It is undisputed that Respondent McDowell County Commission is a political subdivision and that Respondents Jones and Blevins are employees of that political subdivision. *See* W. Va. Code § 29-12A-3.

*Id.* at 339, 412 S.E.2d at 740, Syl. Pt. 7, in part. Regarding justifiable reliance, we have observed that it "provides the essential causative link between the special duty assumed by the local governmental entity and the injury." *Wolfe v. City of Wheeling*, 182 W. Va. 253, 257, 387 S.E.2d 307, 311 (1989) (citation omitted).

> Indeed, at the heart of most of these "special duty" cases is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection. On the other hand, when the reliance element is either not present at all or, if present, is not causally related to the ultimate harm, this underlying concern is inapplicable, and the invocation of the "special duty" exception is then no longer justified.

*Id.* (quoting *Cuffy v. City of New York*, 505 N.E.2d 937, 940 (1987)).

In our de novo review of the circuit court's order granting summary judgment, Syllabus Point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994), we find no error in the court's conclusion that petitioner is unable to establish the existence of a special relationship. Ms. Daugherty called 9-1-1 hours after Defendant Kennedy confronted her, stated that she needed no law enforcement response, and requested only a return call. Once contacted by the respondent officers, she maintained that she did not want to press charges and reiterated her intent only to document the DVPO violation. There is no evidence that respondents assumed a duty to act, and we find further that the DVPO and cited regulations do not amount to promises or actions on respondents' part to assume a duty to act. In fact, Respondents Jones and Blevins explicitly disclaimed any assumption of a duty to act by informing Ms. Daugherty that no immediate action would be taken. Knowing that Respondents Jones and Blevins would take no action—at least not until the Monday following Thanksgiving—the Daughertys could not have justifiably relied on any immediate law enforcement response. Indeed, they decidedly did not rely on any response as Ms. Daugherty installed security cameras and accepted a gun from family members. Accordingly, the court correctly granted summary judgment in respondents' favor as to the existence of a special relationship.

As to petitioner's wanton or reckless conduct claim, employees of political subdivisions, like Respondents Jones and Blevins, are immune from liability unless their "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."[6] W. Va. Code § 29-12A-5-(b)(2). In defining the type of conduct excepted from this immunity, we have stated that

---

[6] This exception to the employee immunity afforded by the Governmental Tort Claims and Insurance Reform Act is "separate and distinct from the common-law special relationship exception to the public duty doctrine." Syl. Pt. 6, *Holsten v. Massey*, 200 W. Va. 775, 490 S.E.2d 864 (1997).

[t]he usual meaning assigned to 'willful,' 'wanton' or 'reckless,' . . . is that the actor has *intentionally* done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It is usually accompanied by a *conscious* indifference to the consequences, amounting almost to willingness that they shall follow; and it has been said that this is indispensable.

*Holsten v. Massey*, 200 W. Va. 775, 788, 490 S.E.2d 864, 877 (1997) (quoting W. Prosser, *Handbook of the Law of Torts* 185 (4th ed. 1971)). Ms. Daugherty's singular purpose in contacting law enforcement was to document a DVPO violation that occurred hours earlier involving a man she had transported to another county. Respondents Jones and Blevins did not disregard any known risk, and petitioner's characterizations of the officers' conduct aside, the record is devoid of evidence of intentional or reckless conduct. To the contrary, the officers informed Ms. Daugherty that they would obtain an arrest warrant after the Thanksgiving holiday, instructed her to call 9-1-1 if Defendant Kennedy returned, and notified her of local domestic violence housing. Because there is no genuine issue of material fact as to any reckless or intentional conduct, the circuit court properly granted summary judgment on this claim.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** December 6, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn